```
                                          FILED
                               CLERK, U.S. DISTRICT COURT

                                      7/23/18

                               CENTRAL DISTRICT OF CALIFORNIA
                               BY:        D.L.            DEPUTY
```

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

TALENT MOBILE
DEVELOPMENT, INC.,

            Plaintiff(s),

v

HEADIOS GROUP, ET AL,

            Defendant(s)

CASE NO. ED CV 18-0156-DOC (DFMx)

**JURY INSTRUCTIONS**

Instruction No. _1_

## DUTY OF JURY

Members of the Jury: Now that you have heard all of the evidence, it is my duty to instruct you on the law that applies to this case.

A copy of these instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

Instruction No. _2_

## BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

Instruction No. _3_

## BURDEN OF PROOF—CLEAR AND CONVINCING EVIDENCE

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

Instruction No. _4_

## TWO OR MORE PARTIES—DIFFERENT LEGAL RIGHTS

You should decide the case as to each party separately. Unless otherwise stated, the instructions apply to all parties.

**Instruction No. _5_**

## WHAT IS EVIDENCE

The evidence you are to consider in deciding what the facts are consists of:

1.    the sworn testimony of any witness;

2.    the exhibits that are admitted into evidence;

3.    any facts to which the lawyers have agreed; and

4.    any facts that I have instructed you to accept as proved.

**Instruction No.** _6_

## WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1)     Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, or in their closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)     Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3)     Testimony that is excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition some evidence was received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

**Instruction No. _6_**

(4)     Anything you may have seen or heard when the court was not in session is not evidence.   You are to decide the case solely on the evidence received at the trial.

**Instruction No.** _7_

## EVIDENCE FOR LIMITED PURPOSE

Some evidence may be admitted only for a limited purpose.

When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

**Instruction No. 8**

## DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience and common sense.

**Instruction No.** 9

## RULING ON OBJECTIONS

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

**Instruction No.** 10

## CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1)　the opportunity and ability of the witness to see or hear or know the things testified to;

(2)　the witness's memory;

(3)　the witness's manner while testifying;

(4)　the witness's interest in the outcome of the case, if any;

(5)　the witness's bias or prejudice, if any;

(6)　whether other evidence contradicted the witness's testimony;

(7)　the reasonableness of the witness's testimony in light of all the evidence; and

(8)　any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it

**Instruction No.** __10__

differently.  You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify.  What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

**Instruction No.** ⎯11⎯

## DEPOSITION IN LIEU OF LIVE TESTIMONY

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

The deposition of Troy Anderson was taken on April 11, 2018. Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

**Instruction No.** 12

## FOREIGN LANGUAGE TESTIMONY

You have heard testimony of a witness who testified in the Arabic language. Witnesses who do not speak English or are more proficient in another language testify through an official court interpreter. Although some of you may know the Arabic language, it is important that all jurors consider the same evidence. Therefore, you must accept the interpreter's translation of the witness's testimony. You must disregard any different meaning.

You must not make any assumptions about a witness or a party based solely on the use of an interpreter to assist that witness or party.

**Instruction No. 13**

## EXPERT OPINION

You have heard testimony from expert witnesses who testified to opinions and the reasons for their opinions. This opinion testimony is allowed, because of the education or experience of this witness.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

Instruction No. 14

# LIABILITY OF CORPORATIONS—SCOPE OF AUTHORITY NOT IN ISSUE

Under the law, a corporation is considered to be a person. It can only act through its employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.

**Instruction No.** 15

## CORPORATIONS AND PARTNERSHIPS—FAIR TREATMENT

All parties are equal before the law and a corporate entity is entitled to the same fair and conscientious consideration by you as any party.

**Instruction No.** 16

## PRELIMINARY INSTRUCTION—TRADEMARK

The plaintiff, Talent Mobile Development, seeks damages against the defendants, Headios Group, Waleed Shaker and Bassam Istambouli for trademark infringement. Likewise, Headios Group has counterclaimed against Talent Mobile Development for trademark infringement. Each of the plaintiff and defendants deny infringing the other's trademark. To help you understand the evidence that will be presented in this case, I will explain some of the legal terms you have heard during this trial.

## DEFINITION AND FUNCTION OF A TRADEMARK

A trademark is a word, name, symbol, or device, or any combination of these items that indicates the source of goods. The owner of a trademark has the right to exclude others from using that trademark or a similar mark that is likely to cause confusion in the marketplace. The main function of a trademark is to identify and distinguish goods or services as the product of a particular manufacturer or merchant and to protect its goodwill.

## HOW A TRADEMARK IS OBTAINED

A person acquires the right to exclude others from using the same mark or a similar mark that is likely to cause confusion in the marketplace by being the first to use it in the marketplace, or by using it before the alleged infringer. Rights in a trademark are obtained only through commercial use of the mark.

**Instruction No.** 16

# TRADEMARK INTERESTS

The owner of a trademark may transfer, give, or sell to another person the owner's interest in the trademark. This type of agreement is called an assignment, and the person who receives the owner's interest is called an assignee and becomes the owner of the mark. An assignee has the right to exclude others from using the trademark or a similar mark that is likely to cause confusion in the marketplace. To be enforceable, the assignment must be in writing and signed. It must also include the goodwill of the business connected with the trademark.

A trademark owner may enforce the right to exclude others in an action for infringement.

# TRADEMARK REGISTRATION

After the owner of a trademark has obtained the right to exclude others from using the trademark, the owner may obtain a certificate of registration issued by the United States Patent and Trademark Office. Thereafter, when the owner brings an action for infringement, the owner may rely solely on the registration certificate to prove that the owner has the right to exclude others from using the trademark or a similar mark that is likely to cause confusion in the marketplace in connection with the type of goods specified in the certificate. These presumptions in favor of the owner created by the certificate of registration can be overcome or rebutted only by certain types of evidence that I will describe to you later as appropriate.

**Instruction No.** 16

# LIKELIHOOD OF CONFUSION

To prove infringement, the trademark owner must prove, by a preponderance of the evidence, that the alleged infringer, without the trademark owner's consent, used in commerce a reproduction, copy, counterfeit or colorable imitation of the owner's mark in connection with the distribution or advertisement of goods, such that the alleged infringer's use of the mark is likely to cause confusion as to the source of the goods. It is not necessary that the mark used by the infringer be an exact copy of the owner's mark. Rather, the trademark owner must demonstrate that, viewed in its entirety, the mark used by the infringer is likely to cause confusion in the minds of reasonably prudent purchasers or users as to the source of the product in question.

I have already determined prior to you coming here to participate as jurors that there is a likelihood of confusion between Talent Mobile Development's registered trademarks and Headios Group's use of the marks "Real Caller" and "Reel Caller." Because Talent Mobile Development acquired Troy Anderson's rights to "Real Caller ID" after I made the determination regarding Talent Mobile Development's registered trademarks and Headios Group's use of the marks "Real Caller" and/or "Reel Caller," I was not called upon to make a similar determination regarding likelihood of confusion between the "Real Caller ID" mark acquired

**Instruction No.** 16

from Troy Anderson and Headios Group's use of "Real Caller" and/or "Reel Caller." So you each will have to make that determination yourselves.

## THE PLAINTIFF'S BURDEN OF PROOF

In this case, the plaintiff, Talent Mobile Development, contends that the defendants, Headios Group, Waleed Shaker and Bassam Istambouli, have infringed the plaintiff's trademarks. The plaintiff has the burden of proving by a preponderance of the evidence that the plaintiff is the owner of a valid trademark and that the defendant infringed that trademark. Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that the defendant infringed the plaintiff's trademark.

Likewise, Headios Group contends that the Talent Mobile Development, infringed Headios Group's trademark. Headios Group has the burden of proving by a preponderance of the evidence that Headios Group is the owner of a valid trademark and that Talent Mobile Development infringed that trademark. Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that Talent Mobile Development infringed Headios Group's trademark.

## THE DEFENDANT'S BURDEN OF PROOF

The defendants contend that they have a valid prior use defense, and also that plaintiff's registration of the trademark is invalid because defendant used the

**Instruction No. 16**

mark in commerce first, and, because plaintiff misrepresented material facts to the United States Patent and Trademark Office when seeking registration of the mark. The defendant has the burden of proving by a preponderance of the evidence that they have a valid prior use defense or that plaintiff's registration of the trademark is invalid because plaintiff misrepresented material facts to the United States Patent and Trademark Office.

Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that plaintiff's registration of the trademark is invalid because plaintiff misrepresented material facts to the United States Patent and Trademark Office when seeking registration of the mark, or, that defendants have a valid prior use defense.

Each of Talent Mobile Development, and, Headios Group, are a person as that term is used in these instructions.

**Instruction No. 17**

## DEFINITION—TRADEMARK (15 U.S.C. § 1127)

A trademark is any word, name, symbol, device, or any combination thereof, used by a person to identify and distinguish that person's goods from those of others and to indicate the source of the goods.

A person who uses the trademark of another may be liable for damages.

**Instruction No.** 18

## TRADEMARK GEOGRAPHICAL USE

When you consider the use of the trademarks referenced in this case, you must only consider their use within the territory of the United States of America and disregard the use outside of the United States.  Foreign use of a trademark is not directly relevant to a party's trademark claims and at most suggests that use of a trademark was made outside of the United States.

Headios Group contends that it was the first to use the mark "Real Caller." In evaluating this claim you must only consider evidence of use within the United States of America and not consider use outside of the United States of America.

Instruction No. 19

## TRADEMARK LIABILITY—THEORIES AND POLICIES (15 U.S.C. §§ 1114(1), 1125(a))

The trademark laws balance three often-conflicting goals: 1) protecting the public from being misled about the nature and source of goods and services, so that the consumer is not confused or misled in the market; 2) protecting the rights of a business to identify itself to the public and its reputation in offering goods and services to the public; and 3) protecting the public interest in fair competition in the market.

The balance of these policy objectives vary from case to case, because they may often conflict. Accordingly, each case must be decided by examining its specific facts and circumstances, of which you are to judge.

In my instructions, I will identify types of facts you are to consider in deciding if the defendant is liable to the plaintiff for violating the trademark law. These facts are relevant to whether the defendant is liable for:

1.      infringing plaintiff's registered trademark rights, by using a trademark in a manner likely to cause confusion among consumers;

2.      unfairly competing, by using a trademark in a manner likely to cause confusion as to the origin or quality of plaintiff's goods; and

3.      false advertising, by making a false statement that was material and that tended to deceive consumers, injuring the plaintiff in the market.

**Instruction No.** 20

# INFRINGEMENT—ELEMENTS AND BURDEN OF PROOF—TRADEMARK (15 U.S.C. § 1114(1))

On the plaintiff's claim for trademark infringement, the plaintiff has the burden of proving each of the following elements by a preponderance of the evidence:

1.    "Real Caller" is a valid, protectable trademark;

2.    the plaintiff owns "Real Caller" as a trademark; and

3.    the defendant used "Real Caller" and/or "Reel Caller" without the consent of the plaintiff in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods.

If you find that each of the elements on which the plaintiff has the burden of proof has been proved, your verdict should be for the plaintiff. If, on the other hand, the plaintiff has failed to prove any of these elements, your verdict should be for the defendant.

Instruction No. __21__

# INFRINGEMENT—ELEMENTS—PRESUMED VALIDITY AND OWNERSHIP—REGISTERED TRADEMARK (15 U.S.C. §§ 1057, 1065 and 1115)

I gave you the instruction titled, "Infringement – Elements and Burden Of Proof – Trademark," that requires the plaintiff to prove by a preponderance of the evidence that the trademark is valid and protectable and that the plaintiff owns the trademark. A valid trademark is a word, name, symbol, device, or any combination of these, that indicates the source of goods and distinguishes those goods from the goods of others. A trademark becomes protectable after it is used in commerce.

One way for the plaintiff to prove trademark validity is to show that the trademark is registered. An owner of a trademark may obtain a certificate of registration issued by the United States Patent and Trademark Office and may submit that certificate as evidence of the validity and protectability of the trademark and of the certificate holder's ownership of the trademark covered by that certificate.

Exhibits 1 and 2 are certificates of registration from the United States Patent and Trademark Office. It was submitted by the plaintiff as proof of the validity of the trademarks and that the plaintiff owns the trademarks.

Instruction No. 21

However, the defendant submitted evidence to dispute the validity of Exhibits 1 and 2. The defendant alleges that the certificates cannot be considered proof of validity and ownership of the trademark because defendant's predecessor-in-interest first used the mark "Real Caller" in U.S. commerce prior to plaintiff's registration.

Unless the defendant proves by a preponderance of the evidence that defendant's predecessor-in-interest first used the mark "Real Caller" in commerce prior to plaintiff's registration, you must consider the trademark to be conclusively proved as valid and owned by the plaintiff. However, if the defendant shows that defendant's predecessor-in-interest first used the mark "Real Caller" in U.S. commerce by a preponderance of the evidence, then the facts stated in the certificate are no longer conclusively presumed to be correct. You should then consider whether all of the evidence admitted in this case, in addition to this certificate of registration, shows by a preponderance of the evidence that the trademark is valid and owned by the plaintiff, as I explained in the instruction titled, "infringement – Elements and Burden Of Proof – Trademark."

Instruction No. _22_

# INFRINGEMENT—ELEMENTS—VALIDITY—UNREGISTERED MARKS

Plaintiff's "Real Caller ID" is not registered.  Likewise, Headios Group's mark "Real Caller" and/or "Reel Caller" are not registered.  Unregistered trademarks can be valid and provide the trademark owner with the exclusive right to use that mark.  A valid trademark is a word, name, symbol, device, or any combination of these items that is either:

1. inherently distinctive; or

2. descriptive, but has acquired a secondary meaning.

Only a valid trademark can be infringed. Only if you determine plaintiff proved by a preponderance of the evidence that the mark "Real Caller ID" is a valid trademark should you consider whether plaintiff owns it or whether defendant's actions infringed it.  The same standard applies to Headios Group's mark "Real Caller" and/or "Reel Caller."

Only if you determine that the parties' respective marks are not inherently distinctive should you consider whether it is descriptive but became distinctive through the development of secondary meaning, as I will direct in the instruction titled, "Infringement – Elements – Validity – Distinctiveness – Secondary Meaning."

Instruction No. 23

# INFRINGEMENT—ELEMENTS—VALIDITY—UNREGISTERED MARK—DISTINCTIVENESS

### Strength as a Likelihood of Confusion Factor

How strongly a trademark indicates that a good comes from a specific source even if unknown is an important factor to consider in assessing its validity.

The plaintiff asserts "Real Caller ID" is a valid and protectable unregistered trademark for its mobile application for use as a global directory. Likewise, Headios Group asserts that "Real Caller" and/or "Reel Caller" are valid and protectable unregistered trademarks for its mobile application for use as a global directory. The plaintiff contends that the defendant's use of similar words in connection with the defendant's mobile application "Real Caller" and/or "Reel Caller" infringes plaintiff's trademark and is likely to cause confusion about the business associated with that trademark. Similarly, Headios Group contends that Talent Mobile Development's use of similar words in connection with its mobile application "Real Caller" infringes Headios Group's trademark and is likely to cause confusion. In order to determine if the parties have met their respective burdens of showing that "Real Caller ID" on the one hand, and, "Real Caller" and/or "Reel Caller" on the other hand, are valid trademarks, you should classify them on the spectrum of trademark distinctiveness that I will explain in this instruction.

**Instruction No. 23**

An inherently distinctive trademark is a word, symbol or device, or combination of them, which intrinsically identifies a particular source of a good in the market. The law assumes that an inherently distinctive trademark is one that almost automatically tells a consumer that it refers to a brand or a source for a product, and that consumers will be predisposed to equate the trademark with the source of a product.

### Spectrum of Marks

Trademark law provides protection to distinctive or strong trademarks. Conversely, trademarks that are not as distinctive or strong are called "weak" trademarks and receive less protection from infringing uses. Trademarks that are not distinctive are not entitled to any trademark protection. For deciding trademark protectability you must consider whether a trademark is inherently distinctive. Trademarks are grouped into four categories according to their relative strength or distinctiveness. These four categories are, in order of strength or distinctiveness: arbitrary (which is inherently distinctive), suggestive (which also is inherently distinctive), descriptive (which is protected only if it acquires in consumers' minds a "secondary meaning" which I explain in the instruction titled, "Infringement – Elements – Validity – Distinctiveness – Secondary Meaning") and, generic names (which are entitled to no protection).

**Instruction No.** 23

**Arbitrary Trademarks.** The first category of "inherently distinctive" trademarks is arbitrary trademarks. They are considered strong marks and are clearly protectable. They involve the arbitrary, fanciful or fictitious use of a word to designate the source of a product or service. Such a trademark is a word that in no way describes or has any relevance to the particular product or service it is meant to identify. It may be a common word used in an unfamiliar way. It may be a newly created word or parts of common words which are applied in a fanciful, fictitious or unfamiliar way, solely as a trademark.

For instance, the common word "apple" became a strong and inherently distinctive trademark when used by a company to identify the personal computers that company sold. The company's use of the word "apple" was arbitrary or fanciful because "apple" did not describe and was not related to what the computer was, its components, ingredients, quality, or characteristics. "Apple" was being used in an arbitrary way to designate for consumers that the computer comes from a particular manufacturer or source.

**Suggestive Trademarks.** The next category is suggestive trademarks. These trademarks are also inherently distinctive but are considered weaker than arbitrary trademarks. Unlike arbitrary trademarks, which are in no way related to what the product is or its components, quality, or characteristics, suggestive trademarks imply some characteristic or quality of the product and/or service to

**Instruction No. 23**

which they are attached. If the consumer must use imagination or any type of multi-stage reasoning to understand the trademark's significance, then the trademark does not describe the product's features, but merely suggests them.

A suggestive use of a word involves consumers associating the qualities the word suggests to the product and/or service to which the word is attached. For example, when "apple" is used not to indicate a certain company's computers, but rather "Apple-A-Day" Vitamins, it is being used as a suggestive trademark. "Apple" does not describe what the vitamins are. However, consumers may come to associate the healthfulness of "an apple a day keeping the doctor away" with the supposed benefits of taking "Apple-A-Day" Vitamins.

**Descriptive Trademarks.** The third category is descriptive trademarks. These trademarks directly identify or describe some aspect, characteristic, or quality of the product and/or service to which they are affixed in a straightforward way that requires no exercise of imagination to be understood.

For instance, the word "apple" is descriptive when used in the trademark "CranApple" to designate a cranberry-apple juice. It directly describes ingredients of the juice. Other common types of descriptive trademarks identify where a product and/or service comes from, or the name of the person who makes or sells the product and/or service. Thus, the words "Apple Valley Juice" affixed to cider from the California town of Apple Valley is a descriptive trademark because it

Instruction No. 23

geographically describes where the cider comes from. Similarly, a descriptive trademark can be the personal name of the person who makes or sells the product. So, if a farmer in Apple Valley, Judy Brown, sold her cider under the label "Judy's Juice" (rather than CranApple) she is making a descriptive use of her personal name to indicate and describe who produced the apple cider.

**Generic Names.** The fourth category is entitled to no protection at all. They are called generic names and they refer to a general name of the product and/or service, as opposed to the plaintiff's brand for that product and/or service. Generic names are part of our common language that we need to identify all such similar products and/or services. A generic name is a name for the product and/or service on which it appears.

If the primary significance of the alleged mark is to name the type of product and/or service rather than the provider, the term is a generic name and cannot be a valid trademark. If the majority of relevant consumers would understand the term to name the type of product and/or service rather than the provider, the primary significance of the term is generic and not entitled to protection as a trademark.

The word "apple" can be used as a generic name and not be entitled to any trademark protection. This occurs when the word is used to identify the fruit from an apple tree.

The computer maker who uses the word "apple" as a trademark to identify

**Instruction No.** 23

its personal computer, or the vitamin maker who uses that word as a trademark on vitamins, has no claim for trademark infringement against the grocer who used that same word to indicate the fruit sold in a store. As used by the grocer, the word is generic and does not indicate any particular source of the product. As applied to the fruit, "apple" is simply a commonly used name for what is being sold.

### Mark Distinctiveness and Validity

If you decide that plaintiff's "Real Caller ID" is arbitrary or suggestive, it is considered to be inherently distinctive. The same standard applies to Headios Group's "Real Caller" and/or "Reel Caller". An inherently distinctive trademark is valid and protectable.

On the other hand, if you determine that "Real Caller ID" is generic, it cannot be distinctive and therefore is not valid nor protectable. This standard also applies to Headios Group's "Real Caller" and/or "Reel Caller." You must render a verdict for the defendant on the charge of infringement pursuant to the instruction titled, "Infringement – Elements – Validity – Unregistered Marks," if you determine that "Real Caller ID" is generic.

If you decide that "Real Caller ID" and/or "Real Caller" and/or "Reel Caller" are descriptive, you will not know if the trademarks are valid or invalid until you consider whether any has gained distinctiveness by the acquisition of

**Instruction No. 23**

secondary meaning, which I explain in the instruction titled, "Infringement – Elements – Validity – Distinctiveness – Secondary Meaning." .

Instruction No. 24

# INFRINGEMENT—ELEMENTS—VALIDITY—DISTINCTIVENESS — SECONDARY MEANING

If you determined in the instruction titled, "Infringement – Elements – Validity – Unregistered Mark – Distinctiveness," that plaintiff's "Real Caller ID," or, Headios Group's "Real Caller" and/or "Reel Caller" are descriptive, you must consider the recognition that each respective mark has among prospective consumers in order to determine whether any of the marks are valid and protectable even though descriptive. This market recognition is called the trademark's "secondary meaning."

A word, name, symbol, device or any combination of these items acquires a secondary meaning when it has been used in such a way that its primary significance in the minds of the prospective consumers is not the product itself, but the identification of the product with a single source, regardless of whether consumers know who or what that source is. You must find that the preponderance of the evidence shows that a significant number of the consuming public associates the mark "Real Caller ID" with a single source, in order to find that it has acquired secondary meaning.

When you are determining whether plaintiff's "Real Caller ID," on the one hand, or, Headios Group's "Real Caller" and/or "Reel Caller," on the other hand, has acquired a secondary meaning, consider the following factors:

**Instruction No.** 24

(1)    Consumer Perception. Whether the people who purchase the product and/or service that bears the claimed trademark associate the trademark with the owner;

(2)    Advertisement. To what degree and in what manner the owner may have advertised under the claimed trademark;

(3)    Demonstrated Utility. Whether the owner successfully used this trademark to increase the sales of its product and/or service;

(4)    Extent of Use. The length of time and manner in which the owner used the claimed trademark;

(5)    Exclusivity. Whether the owner's use of the claimed trademark was exclusive;

(6)    Copying. Whether the defendant intentionally copied the owner's trademark;

(7)    Actual Confusion. Whether the defendant's use of the plaintiff's trademark has led to actual confusion among a significant number of consumers.


The presence or absence of any particular factor should not necessarily resolve whether plaintiff's "Real Caller ID," on the one hand, or, Headios Group's "Real Caller" and/or "Reel Caller," on the other hand, have acquired secondary meaning.

**Instruction No.** 24

Descriptive marks are protectable only to the extent you find they acquired distinctiveness through secondary meaning by the public coming to associate the mark with the owner of the mark. Descriptive marks are entitled to protection only as broad as the secondary meaning they have acquired, if any. If they have acquired no secondary meaning, they are entitled to no protection and cannot be considered a valid mark.

The plaintiff has the burden of proving that the mark "Real Caller ID" has acquired a secondary meaning. Likewise, Headios Group has the burden of proving that the mark "Real Caller" and/or "Reel Caller" has acquired a secondary meaning. Further, Headios Group has the burden of proving that the mark "Real Caller ID" lacks a secondary meaning, and, plaintiff has the burden of proving that the mark "Real Caller" and/or "Reel Caller" lack a secondary meaning.

The mere fact that the plaintiff is using the mark "Real Caller ID", or that the plaintiff began using it before the defendant, does not mean that the trademark has acquired secondary meaning. This also applies to Headios Group's use of the mark "Real Caller" and/or "Reel Caller." There is no particular length of time that a trademark must be used before it acquires a secondary meaning.

Instruction No. 25

# INFRINGEMENT—ELEMENTS—OWNERSHIP—GENERALLY

The law entitles the trademark owner to exclude others from using that trademark. A person acquires the right to exclude others from using a trademark by being the first to use it in the marketplace or by using it before the alleged infringer. A person also acquires the right to exclude others from using a trademark if industry or public usage creates, for a majority of relevant consumers, an association between the person and the mark prior to the alleged infringer's use.

If you find the plaintiff's mark "Real Caller ID" to be valid, that is, inherently distinctive, you must consider whether the plaintiff used the "Real Caller ID" mark as a trademark for plaintiff's mobile application before the defendant began to use the "Real Caller" and/or "Reel Caller" marks to market its mobile application in the area where the plaintiff sells its mobile applications.

A trademark is "used" for purposes of this instruction when it is transported or sold in commerce and the trademark is attached to the product, or placed on its label or container or if that is not practical, placed on documents associated with the goods or their sale.

If the plaintiff has not shown by a preponderance of the evidence that the plaintiff used the mark "Real Caller ID" before the defendant's use of "Real Caller" and/or "Reel Caller", then you cannot conclude that the plaintiff is the owner of the trademark.

Instruction No. _26_

# INFRINGEMENT—ELEMENTS—OWNERSHIP—PRIORITY THROUGH TACKING

A party may assert that its mark has priority through the doctrine of "tacking." Tacking allows a party to claim priority in a mark based on the first use date of a similar but technically distinct mark when the previously used mark is the legal equivalent of the mark in question or indistinguishable therefrom, such that consumers consider both as the same mark. The marks must create the same, continuing commercial impression, and the later mark should not materially differ from or alter the character of the mark attempted to be tacked.

I have already determined that plaintiff cannot "tack" the marks "Real Caller ID" and "Real Caller" together.

**Instruction No.** _27_

## TRADEMARK OWNERSHIP—ASSIGNEE (15 U.S.C. § 1060)

The owner of a trademark may transfer to another the owner's interest in the trademark, that is, the right to exclude others from using the mark. This transfer is called an assignment, and the person to whom this right is assigned is called an assignee and becomes the owner of the trademark.

The assignment must be in writing and signed. To be enforceable, the assignment must include the goodwill of the business connected with the mark.

An assignee may enforce this right to exclude others in an action for infringement.

**Instruction No.** _28_

## TRADEMARK OWNERSHIP—LICENSEE

The owner of a trademark may enter into an agreement that permits another person to use the trademark. This type of agreement is called a license, and the person permitted to use the trademark is called a licensee.

A license agreement may include the right to exclude others from using the trademark. A licensee may enforce this right to exclude others in an action for infringement.

Although assignments must be written, a license can be oral.

**Instruction No.** 29

# TRADEMARK OWNERSHIP—MERCHANT OR DISTRIBUTOR

A merchant and/or distributor may own a trademark that identifies products the merchant and/or distributor sells even though the products are manufactured by someone else.

Instruction No. 30

## EFFECT OF A VALID ASSIGNMENT

After a valid assignment, the assignee acquires all of the legal advantages of the mark that the assignor enjoyed, including priority of use.

Instruction No. 31

## INFRINGEMENT—LIKELIHOOD OF CONFUSION—FACTORS— SLEEKCRAFT TEST (15 U.S.C. §§ 1114(1) and 1125(a))

You need not utilize this instruction with respect to Plaintiff's mark "Real Caller" because I have already determined there is a likelihood of confusion between plaintiff's and defendant's use of the "Real Caller" and/or "Reel Caller" marks.

However, in considering whether or not defendants infringed plaintiff's "Real Caller ID" mark, you must consider whether defendant's use of the mark "Real Caller" and/or "Reel Caller" is likely to cause confusion about the source of the plaintiff's or the defendant's goods.

I will suggest some factors you should consider in deciding this. The presence or absence of any particular factor that I suggest should not necessarily resolve whether there was a likelihood of confusion, because you must consider all relevant evidence in determining this. As you consider the likelihood of confusion you should examine the following:

(1)    Strength or Weakness of the Plaintiff's Mark. The more the consuming public recognizes the plaintiff's trademark as an indication of origin of the plaintiff's goods, the more likely it is that consumers would be confused about the source of the defendant's goods if the defendant uses a similar mark.

**Instruction No.** 31

(2)    Defendant's Use of the Mark. If the defendant and plaintiff use their trademarks on the same, related, or complementary kinds of goods there may be a greater likelihood of confusion about the source of the goods than otherwise.

(3)    Similarity of Plaintiff's and Defendant's Marks. If the overall impression created by the plaintiff's trademark in the marketplace is similar to that created by the defendant's trademark in appearance, sound or meaning, there is a greater chance that consumers are likely to be confused by defendant's use of a mark.

(4)    Actual Confusion. If use by the defendant of the plaintiff's trademark has led to instances of actual confusion, this strongly suggests a likelihood of confusion. However actual confusion is not required for a finding of likelihood of confusion. Even if actual confusion did not occur, the defendant's use of the trademark may still be likely to cause confusion. As you consider whether the trademark used by the defendant creates for consumers a likelihood of confusion with the plaintiff's trademark, you should weigh any instances of actual confusion against the opportunities for such confusion. If the instances of actual confusion have been relatively frequent, you may find that there has been substantial actual confusion. If, by contrast, there is a very large volume of sales, but only a few isolated instances of actual confusion you may find that there has not been substantial actual confusion.

Instruction No. 31

(5)     Defendant's Intent. Knowing use by defendant of the plaintiff's trademark to identify similar goods may strongly show an intent to derive benefit from the reputation of the plaintiff's mark, suggesting an intent to cause a likelihood of confusion. On the other hand, even in the absence of proof that the defendant acted knowingly, the use of plaintiff's trademark to identify similar goods may indicate a likelihood of confusion.

(6)     Marketing/Advertising Channels. If the plaintiff's and defendant's goods and/or services are likely to be sold in the same or similar stores or outlets, or advertised in similar media, this may increase the likelihood of confusion.

(7)     Consumer's Degree of Care. The more sophisticated the potential buyers of the goods or the more costly the goods, the more careful and discriminating the reasonably prudent purchaser exercising ordinary caution may be. They may be less likely to be confused by similarities in the plaintiff's and defendant's trademarks.

(8)     Product Line Expansion. When the parties' products differ, you may consider how likely the plaintiff is to begin selling the products for which the defendant is using the plaintiff's trademark. If there is a strong possibility of expanding into the other party's market, there is a greater likelihood of confusion.

Instruction No. 32

# INFRINGEMENT—LIKELIHOOD OF CONFUSION—FACTOR—STRENGTH OF TRADEMARK

## Strength as a Factor for Evaluating Likelihood of Confusion

How strongly the plaintiff's trademark indicates that the goods or services come from a particular source is an important factor to consider in determining whether the trademark used by the defendant is likely to create confusion with the plaintiff's mark.

The plaintiff asserts that "Real Caller ID" is a trademark for its goods or services. The plaintiff contends that the defendant's use of "Real Caller" and/or "Reel Caller" in connection with the defendant's mobile application infringes plaintiff's trademark because it is likely to cause confusion.

## The Strength of Marks

The more distinctive and strong a trademark law is, the greater the scope of protection the law provides. The law measures trademark strength by considering two prongs:

1.    Commercial Strength: This is the amount of marketplace recognition of the mark; and

2.    Conceptual Strength: This is the placement of the mark on the spectrum of marks.

**Instruction No.** <u>32</u>

**Commercial Strength:** What is "commercial strength?" Not all marks are equally well known. Trademark strength is somewhat like the renown of people. Only a few very famous people are widely known and recognized around the world. Most people are known and recognized only by a small circle of family and friends.

Some trademarks are relatively "strong," in the sense they are widely known and recognized. A few trademarks are in the clearly "famous" category. These "famous" marks are those like "Apple" for computers and mobile phones, "Google" for a search engine, "Coca-Cola" for beverages and "Toyota" for vehicles. Some trademarks may be strong and well known only in a certain market niche such as mountain climbing gear, plumbing supplies, or commercial airplane electronics equipment, but relatively weak outside that field.

**Conceptual Strength:** What is "conceptual strength?" All trademarks are grouped into two categories: either inherently distinctive or not inherently distinctive. If a mark is inherently distinctive it is immediately protected when first used. If it is not inherently distinctive, to become a legally protected mark, a designation must acquire distinctiveness in people's minds by becoming known as an indication of source of goods or services. The law calls this "secondary meaning."

**Instruction No. 32**

For determining the conceptual strength of a mark, trademarks are grouped on a spectrum according to the nature of the mark. In the spectrum, there are three categories of word marks that the law regards as being inherently distinctive: coined, arbitrary and suggestive. Descriptive word marks are regarded as not being inherently distinctive and require a secondary meaning to become a valid trademark.

Coined and arbitrary words are regarded as being relatively strong marks. A coined word mark is a word created solely to serve as a trademark. For example, "Clorox" for cleaning products and "Exxon" for gasoline are coined marks.

Arbitrary marks are words that in no way describe or suggest the nature of the goods or services it is used with. For example, "apple" is a common word, but it does not describe or suggest anything about the nature of "Apple" brand computers or smart phones. It is an arbitrary word when used as a mark on those products and is said to be conceptually strong as a mark. Suggestive word marks are regarded as not being as conceptually strong as coined or arbitrary marks.

Suggestive trademarks suggest some characteristic or quality of the goods or services with which they are used. If the consumer must use her imagination or think through a series of steps to understand what the trademark is telling about the product, then the trademark does not directly describe the product's features, but

**Instruction No.** 32

merely suggests them. For example, the trademark "Tail Wagger" for dog food merely suggests that your dog will like the food.

For example, when "apple" is used in the a mark "Apple-A-Day" for vitamins, it is being used as a suggestive trademark. "Apple" does not describe what the vitamins are. However, it suggests the healthfulness of "an apple a day keeping the doctor away" with the supposed benefits of taking "Apple-A-Day" vitamins.

Descriptive word marks are not inherently distinctive. These marks directly describe some characteristic, or quality of the goods or services with which they are used in a straightforward way that requires no exercise of imagination. For instance, the word "apple" is descriptive when used in the trademark "CranApple" to designate a cranberry-apple juice. It directly describes one of ingredients of the juice.

Instruction No. _33_

**TRADEMARK INFRINGEMENT—PERSONAL LIABILITY OF INDIVIDUAL CORPORATE OFFICERS OR DIRECTORS**

An officer or director of a corporation can be personally liable for trademark infringement if the officer or director authorized or approved infringement of a trademark by the corporation, or knowingly and substantially participated in the infringement of a trademark, notwithstanding that he acted as an agent of the corporation and not on his own behalf.

**Instruction No.** 34

# DEFENSES—ABANDONMENT—AFFIRMATIVE   DEFENSE—DEFENDANT'S BURDEN OF PROOF (15 U.S.C. § 1127)

The owner of a trademark cannot exclude others from using the trademark if it has been abandoned.

A party may contend that the trademark has become unenforceable because the owner abandoned it. The party making this claim has the burden of proving abandonment by a preponderance of the evidence.

The owner of a trademark abandons the right to exclusive use of the trademark when the owner:

1.    discontinues its good faith use in the ordinary course of trade, intending not to resume using it;

2.    acts or fails to act so that the trademark's principal meaning to prospective consumers has become the product and/or service itself and not the producer of the product or provider of the service; or

3.    fails to exercise adequate quality control over the goods and/or services sold under the trademark by a licensee.

**Instruction No.** 35

# DEFENSES—CONTINUOUS PRIOR USE WITHIN REMOTE GEOGRAPHIC AREA—AFFIRMATIVE DEFENSE (15 U.S.C. § 1115(b)(5))

An owner of a registered trademark may not exclude others who began using that trademark in a geographic area, without knowledge of the owner's prior use of the trademark elsewhere, and before the owner had applied for registration of the trademark.

The defendant contends that defendant has the right to use the trademark within the United States.

The defendant has the burden of proving each of the following by a preponderance of the evidence:

1.     the defendant continuously used the trademark, without interruption, in the United States;

2.     the defendant began using the trademark without knowledge of the plaintiff's prior use elsewhere; and

3.     the defendant used the trademark before the plaintiff applied for registration of the trademark.

Instruction No. 36

## TRADEMARK DAMAGES—ACTUAL OR STATUTORY NOTICE (15 U.S.C. § 1111)

In order for plaintiff to recover damages, the plaintiff has the burden of proving by a preponderance of the evidence that defendant had either statutory or actual notice that the plaintiff's the trademark was registered.

Defendant had statutory notice if:

1.     plaintiff displayed the trademark with the words "Registered in U.S. Patent and Trademark Office" or

2.     plaintiff displayed the trademark with the words "Reg. U.S. Pat. & Tm. Off." or

3.     plaintiff displayed the trademark with the letter R enclosed within a circle, thus ®.

**Instruction No.** 37

## TRADEMARK DAMAGES—PLAINTIFF'S ACTUAL DAMAGES (15 U.S.C. § 1117(a))

If you find for the plaintiff on the plaintiff's infringement claim and find that the defendant had statutory notice or actual notice of the plaintiff's registered trademark, you must determine the plaintiff's actual damages.

The plaintiff has the burden of proving actual damages by a preponderance of the evidence. Damages means the amount of money which will reasonably and fairly compensate the plaintiff for any injury you find was caused by the defendant's infringement of the plaintiff's registered trademark.

You should consider the following:

(1)   The injury to the plaintiff's reputation;

(2)   The injury to plaintiff's goodwill, including injury to the plaintiff's general business reputation;

(3)   The lost profits that the plaintiff would have earned but for the defendant's infringement. Profit is determined by deducting all expenses from gross revenue;

(4)   The expense of preventing customers from being deceived;

(5)   The cost of future corrective advertising reasonably required to correct any public confusion caused by the infringement.

When considering prospective costs (e.g., cost of future advertising, expense of preventing customers from being deceived), you must not overcompensate.

**Instruction No.** 37

Accordingly, your award of such future costs should not exceed the actual damage to the value of the plaintiff's mark at the time of the infringement by the defendant.

**Instruction No. 38**

## TRADEMARK DAMAGES—DEFENDANT'S PROFITS

## (15 U.S.C. § 1117(a))

In addition to actual damages, the plaintiff is entitled to any profits earned by the defendant that are attributable to the infringement, which the plaintiff proves by a preponderance of the evidence. You may not, however, include in any award of profits any amount that you took into account in determining actual damages.

Profit is determined by deducting all expenses from gross revenue.

Gross revenue is all of defendant's receipts from using the trademark in the sale of a product. The plaintiff has the burden of proving a defendant's gross revenue by a preponderance of the evidence.

Expenses are all operating and overhead and production costs incurred in producing the gross revenue. The defendant has the burden of proving the expenses and the portion of the profit attributable to factors other than use of the infringed trademark by a preponderance of the evidence.

Unless you find that a portion of the profit from the sale of the goods using the trademark is attributable to factors other than use of the trademark, you should find that the total profit is attributable to the infringement.

Instruction No. 39

## ANTI-CYBERSQUATTING (15 U.S.C. § 1125(d))

Plaintiff contends that defendant registered, trafficked in, or used a domain name that infringed plaintiff's mark, "Real Caller."  In order to prevail on this claim, plaintiff bears the burden of proving the following:

(1) the defendant registered, trafficked in, or used a domain name;

(2) the domain name is identical or confusingly similar to a protected mark owned by the plaintiff; and

(3) the defendant acted with bad faith intent to profit from that mark.

In determining whether defendant acted with a bad faith intent you may consider factors such as, but not limited to:

(I) the trademark or other intellectual property rights of the person, if any, in the domain name;

(II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

(III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

(IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

(V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill

**Instruction No. 39**

represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous.

**Instruction No.** 39

Bad faith intent shall not be found in any case in which you determine that
the defendant believed and had reasonable grounds to believe that the use of the
domain name was a fair use or otherwise lawful.

**Instruction No. 40**

## VIOLATION OF 15 U.S.C. §1120, FALSE REGISTRATION:

Headios Group contends that plaintiff fraudulently registered the mark "Real Caller" with the United States Patent and Trademark Office. To establish this claim, Headios Group must prove the following:

1.    that plaintiff procured registration in the Patent and Trademark Office of its mark, "Real Caller";

2.    that plaintiff made false or fraudulent declarations or representations, either orally or in writing, to the USPTO in seeking registration of the mark; and

3.    Headios Group must prove by clear and convincing evidence (a) that plaintiff made a false representation to the USPTO regarding a material fact, (b) that plaintiff knew that the representation was false, (c) that plaintiff intended to induce the USPTO to act in reliance on the misrepresentation, (d) the USPTO was thereby deceived into registering the mark.

**Instruction No.** 41

# TORTIOUS INTERFERENCE WITH CONTRACT

Headios Group claims that plaintiff intentionally interfered with the contract between it and Apple, Inc., and, Google, Inc..

To establish this claim, Headios Group must prove all of the following:

1. There was a contract between Headios Group and Google, Inc., and, Headios Group and Apple, Inc.;

2. That plaintiff knew of the contract(s);

3. That plaintiff's conduct prevented performance or made performance more expensive or difficult;

4. That plaintiff intended to disrupt the performance of the contract or knew that disruption of performance was certain or substantially certain to occur;

5. That Headios Group was harmed; and

6. That plaintiff's conduct was a substantial factor in causing Headios Group's harm.

**Instruction No. 42**

## Affirmative Defense—Privilege to Protect Own Financial Interest

Plaintiff claims that there was no intentional interference with contractual relations because it acted only to protect its legitimate financial interests.

To succeed on this claim, plaintiff must prove all of the following:

1. That plaintiff had a legitimate financial interest in the contractual relations because it owned trademarks rights to Real Caller;

2. That plaintiff acted only to protect its own financial interest;

3. That plaintiff acted reasonably and in good faith to protect it; and

4. That plaintiff used appropriate means to protect it.

**Instruction No.** 43

## DAMAGES—PROOF

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for Defendant Headios Group on its Counter-Claim for tortious interference with contract, you must determine Headios Group's damages. Headios Group has the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate Headios Group for any injury you find was caused by the plainitff. You should consider the following:

- The nature and extent of the injuries;

- The reasonable value of earnings lost up to the present time;

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

Instruction No. 44

## DUTY TO DELIBERATE

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

Instruction No. 45

# CONSIDERATION OF EVIDENCE—CONDUCT OF THE JURY

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via email, via text messaging, or any Internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet

**Instruction No.** 45

programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the court immediately.

Instruction No. _46_

## COMMUNICATION WITH COURT

If it becomes necessary during your deliberations to communicate with me, you may send a note through the clerk, signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

**Instruction No.** 47

## RETURN OF VERDICT

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the clerk that you are ready to return to the courtroom.