# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

# CIVIL MINUTES – GENERAL

| | |
|---|---|
| Case No. CV 18-0156-DOC (DFMx) | Date: February 6, 2019 |

Title: TALENT MOBILE DEVELOPMENT, INC V. HEADIOS GROUP ET AL

PRESENT:

### THE HONORABLE DAVID O. CARTER, JUDGE

| Deborah Lewman | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |
| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):** **ORDER DENYING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES [181]; GRANTING MOTION FOR PERMANENT INJUNCTION [190]; DENYING DEFENDANTS' MOTION FOR NEW TRIAL OR TO AMEND JUDGMENT [194]; AND DENYING MOTION FOR RELIEF FROM JUDGMENT [197]**

    This trademark action proceeded to a jury trial and resulted in a verdict in favor of Plaintiff. Before the Court are several post-trial motions by both parties in this matter: Plaintiff Talent Mobile Development, Inc.'s ("Talent Mobile" or "Plaintiff") Motion for Attorneys' Fees (Dkt. 181) and Motion for Permanent Injunction (Dkt. 190); and Defendants Headios Group ("Headios"), Bassam Istambouli ("Istambouli"), and Waleed Shaker's ("Shaker," and collectively, "Defendants") Motion for New Trial or to Amend Judgment (Dkt. 194) and Motion for Relief from Judgment (Dkt. 197). The Court held a hearing on these matters on December 6, 2018. Having reviewed the moving papers and the evidentiary record, and considered the parties' arguments, the Court DENIES Plaintiffs' Motion for Attorneys' Fees; GRANTS Plaintiff's Motion for a Permanent Injunction; and DENIES Defendants' motions.

## I.    Background

Plaintiff and Defendants both market caller identification applications for smartphones. Plaintiff's application has always been named "Real Caller," and Defendant's application was originally called "Real Caller," but was renamed "Reel Caller." Plaintiff sued Defendant for trademark infringement and cybersquatting. This dispute first came before this Court in *Talent Mobile Development, Inc. v. Headios Group et al.* ("*Talent I*"), case number SA CV 16-0464-DOC. Plaintiff filed the Complaint in that case on March 9, 2016. On September 3, 2017, Plaintiff moved for summary judgment on all claims (16-0464, Dkt. 27). The Court ruled on Plaintiff's Motion for Summary Judgment on October 3, 2017 ("MSJ Order") (16-0464, Dkt. 49). The Court summarized the facts as follows, based on the parties' briefing and supporting evidence. The summary provides useful background before discussing the July 2018 trial.[1]

> Talent and Headios both market caller ID applications for smartphones. Opposition Separate Statement of Uncontroverted Facts ("Def. SUF") (Dkt. 36) No. 1, Nos. 13–14; MSJ at 4; Opposition to Summary Judgment ("Opp'n") (Dkt. 35) at 21. Talent's application has always been named "Real Caller," and Headios's application was originally called "Real Caller," but has since been renamed "Reel Caller." Def. SUF Nos. 1–3; Opp'n at 12–13. Talent sued Defendants, including Headios, for trademark infringement and cybersquatting, and the parties dispute who first used the mark "Real Caller." Complaint ("Compl.") (Dkt. 1) ¶¶ 23–45; Def. SUF No. 20; MSJ at 4; Opp'n at 7.
>
> In 2010, the predecessors in interest to Talent Mobile Development created a smartphone app "designed for use as a global phone directory that allows its user to know the name of the party calling the user." MSJ at 4; Declaration of Hassan El Rawasse ("Rawasse Decl.") (Dkt. 29) ¶¶ 1–3. . .
>
> On October 10, 2013, Talent created the domain name real-caller.com. Rawasse Decl. ¶ 26, Ex. 5 . . . Talent also owns registered trademarks 4,613,102 (the Real Caller Logo, registered Sept. 30, 2014) and 4,671,180 (the non-stylized characters, registered Jan. 13, 2015). Def. SUF Nos. 4–6; Rawasse Decl. Exs. 1–2. Registration No. 4,613,102 lists the Real Caller Logo's first use in commerce as Oct. 1, 2013. Rawasse Decl.

---

[1] All citations in the quoted material are to documents and docket numbers in *Talent I*, case number SA CV 16-0464-DOC (DFMx).

  Ex. 1. Registration No. 4,671,180 lists the non-stylized mark's first use in commerce as Oct. 1, 2011. *Id.* Ex. 2.

  Defendant Georges Obeid ("Obeid"), a citizen of Lebanon, founded a foreign corporate entity named 3akarat.net, which developed the software application "Real Caller," *id.*, and published it on the Google Play Store in February 2013. Opp'n at 8, 13; Declaration of Waleed Shaker ("Shaker Decl.") (Dkt. 40) ¶ 6. In April 2013, 3akarat.net published the Real Caller App on the Apple App Store. Declaration of Bassam Istanbuli ("Istanbuli Decl.") (Dkt. 38) ¶ 6. Talent subsequently complained to Apple and Google about the sale of the similarly-named caller ID app. Def. SUF No. 3; MSJ at 4. After Apple and Google sent Obeid infringement notifications, Obeid changed the name of the application to "Reel Caller." Def. SUF No. 3, MSJ at 4; Opp'n at 12–13. Defendants concede that "Reel Caller" sounds identical to "Real Caller." Def. SUF No. 11.

  In January 2016, the rights to the Reel Caller app were assigned to Headios Group. Opp'n at 9. On February 4, 2016, Headios filed a Cancellation Petition before the Trademark Trial and Appeals Board challenging Talent's "Real Caller" mark. *Id.* at 10. Shortly thereafter, Talent filed this lawsuit.

MSJ Order at 1–2. On January 24, 2018, Plaintiff filed the Complaint in the instant case ("*Talent II*"). In the Complaint, Plaintiff again brought three claims: (1) trademark infringement in violation of 15 U.S.C. § 1125(a), (2) trademark infringement in violation of 15 U.S.C. § 1114, and (3) cybersquatting in violation of 15 U.S.C. § 1125(d). Compl. (Dkt. 1) ¶¶ 37–59.

  The parties proceeded to trial on July 17, 18, 19, and 20, 2018. On the first day of trial, Plaintiff admitted Exhibit 89, a document that was produced by Apple pursuant to a subpoena. Trial tr. vol. 1, 7-8 July 17, 2018. This document provides the iTunes App Store billings and royalties in the United States, beginning on September 29, 2013. Tr. Ex. 89. The document shows the application Reel Caller was introduced on December 20, 2013, as part of the content provider name 3akarat.net. Trial tr. vol. 2, 55-57 July 18, 2018; Tr. Ex. 89. Plaintiff also admitted Trial Exhibit 90, which was produced by Google pursuant to a subpoena, and provides estimated earnings from May 2014 through June 2017. Tr. Ex. 90. Shaker testified that Defendants were making $1,000.00 in daily revenue, which he later increased to between $1,000.00 and $1,500.00 per day. Trial tr. vol. 1, 6 July 18, 2018. Shaker testified that in 2015 the daily revenue was approximately the same. *Id* And in 2016 and 2017, the daily revenue "did not change much." *Id*.

On July 23, 2018, the jury returned a verdict in favor of Plaintiff. Dkt. 149. The jury found that Defendants Headios Group, Bassam Istambouli, and Waleed Shaker each infringed on Plaintiff's "Real Caller" trademark, Registration No. 4671180, and the unregistered Real Caller ID trademark. *Id*. The jury determined that none of the defendants infringed on the Real Caller trademark bearing Registration No. 4613102 (the logo). *Id*. The jury also determined that Headios Group in bad faith registered, trafficked in, or used a domain name that infringed on one of the Real Caller trademarks and is therefore liable for cybersquatting. *Id*. The jury found that Plaintiff is not liable for any of the counterclaims. *Id*. The jury awarded $710,261.00 to Plaintiff for the trademark infringement and $0.00 for cybersquatting. *Id*.

## II.　　Legal Standards

### A.　　Attorneys' Fees and Costs

"The general American rule is that the prevailing party may not recover attorney's fees absent express provision of a contract or statute or exceptional circumstances warranting the exercise of equitable powers." *Hannon v. Sec. Nat. Bank*, 537 F.2d 327, 328 (9th Cir. 1976). For trademark infringement claims, the Lanham Act provides that the "court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). The Ninth Circuit has explained that "generally a trademark case is exceptional for purposes of an award of attorneys' fees when the infringement is malicious, fraudulent, deliberate or willful." *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1409 (9th Cir. 1993). Willful infringement means that the defendant acted with a "deliberate intent to deceive." *Id.* at 1406. For copyright infringement claims, section 505 of the Copyright Act provides that a court "may . . . award a reasonable attorney's fee to the prevailing party." 17 U.S.C. § 505.

In determining if fees are appropriate under both copyright and trademark infringement claims, the Court must consider several "nonexclusive factors," such as (1) frivolousness; (2) motivation; (3) objective unreasonableness (both in the factual and in the legal components of the case); and (4) the need in particular circumstances to advance considerations of compensation and deterrence. *See SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1181 (9th Cir. 2016) (setting forth the aforementioned factors in determining whether attorneys' fees are appropriate in a patent infringement context and holding that the same factors apply in a trademark infringement context). District courts analyzing a request for fees under the Lanham Act should examine the "totality of the circumstances" to determine if the case was exceptional. *Id*.

### B.　　　Permanent Injunction

Under the Lanham Act, "the district court [has] the 'power to grant injunctions according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right' of the trademark owner." *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1137 (9th Cir. 2006) (citing 15 U.S.C. § 1116(a)). Permanent injunctive relief is appropriate where a plaintiff demonstrates: (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardships favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391–92 (2006).

### C.　　　Rule 59(a) Motion for New Trial

Rule 59 provides that a new jury trial may be granted under certain conditions. Fed. R. Civ. P. 59(a). Granting a new trial is left to the sound discretion of the trial court. *See Browning-Ferris Indus. v. Kelco Disposal, Inc.*, 492 U.S. 257, 278 (1989). Bases for a new trial include: (1) a verdict against the clear weight of the evidence, *see Landes Const. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987); (2) evidence, discovered after trial, that would not have been uncovered earlier through the exercise of due diligence and that is of such magnitude that its production at trial would likely have changed the outcome of the case, *see Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992–93 (9th Cir. 2001) (quoting *Defenders of Wildlife v. Bernal*, 204 F.3d 920, 929 (9th Cir. 2000)); (3) jury misconduct, *see United States v. Romero-Avila*, 210 F.3d 1017, 1024 (9th Cir. 2000); and (4) error in law that has substantially prejudiced a party, *see Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995). Because the task of weighing conflicting evidence and making credibility determinations is the job of the jury and not the court, it is expected that judges will grant motions for a new trial only when the judge has given full respect to the jury's findings but is left with the firm conviction that a mistake has been committed. *Lucent Techs., Inc. v. Microsoft Corp.*, 837 F. Supp. 2d 1107, 1126 (S.D. Cal. 2011); *Landes*, 833 F.2d at 1371–72; *see also Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000).

### D.　　　59(e) Motion to Alter or Amend a Judgment

A court may alter or amend a final judgment pursuant to Federal Rule of Civil Procedure 59(e). District courts have "considerable discretion" when addressing motions to amend a judgment under Rule 59(e). *Turner v. Burlington Northern Santa Fe R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003) (internal citations omitted). A "Rule 59(e) motion is an extraordinary remedy, to be used sparingly in the interests of finality and conservation

of judicial resources." *Wood v. Ryan*, 759 F.3d 1117, 1121 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 21 (2014) (internal citation and quotation marks omitted). A Rule 59(e) motion to amend a judgment may be granted:

> (1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law.

*Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) (citing *McDowell v. Calderon*, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999) (en banc) (per curiam)). "A Rule 59(e) motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).

### E.　60(b) Motion for Relief From Judgment

Federal Rule of Civil Procedure 60(b) provides that the court may relieve a party or a from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud; (4) a void judgment; (5) a satisfied or discharged judgment; or (6) 'extraordinary circumstances' which would justify relief. *School District No. 1J, Multnomah County v. Acands, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) (quoting *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1442 (9th Cir. 1991)).

## III.　Discussion

### A.　Motion for New Trial/Amended Judgment

Defendants move for a new trial or an amended judgment, arguing that the jury's verdict is not supported by the weight of the evidence. Mot.[2] at 3. According to Defendants, although Plaintiff claimed first use of the mark "Real Caller" in the years 2011 and 2013, Plaintiff failed to meet its burden establishing priority of use and/or use in commerce by presenting evidence of (a) actual use and (b) display of the mark in commerce. *Id*. Defendant argues the record is devoid of any evidence that Plaintiff used the mark "Real Caller" in commerce prior to Quarter 4, 2013. *Id*. Thus Defendants argue

---

[2] Because the Court addresses each post-trial motion separately, abbreviations in each section shall refer to that pleading's respective memorandum, opposition, and reply, unless otherwise indicated.

the jury's verdict in favor of Plaintiff with regard to its word mark registration for "Real Caller" was in error against the weight of the evidence. *Id*.

With regard to the unregistered mark "Real Caller ID," Defendants argue that Plaintiff introduced no evidence of "likelihood of confusion" as between that mark and Headios Group's mark "Real Caller" and/or "Reel Caller." *Id*. And Defendants argue that Plaintiff did not present any evidence of actual damages or lost revenues, but instead sought disgorgement of profits while failing to establish that Istambouli or Shaker received profits appropriate for this remedy. *Id*. Defendants also argue that they received documents from Blackberry, Inc., after the conclusion of trial that reveal Plaintiff did not have an operable application on the Blackberry store until 2016 at the earliest. *Id*. at 4.

Plaintiff responds that because it registered the mark with the United States Patent and Trademark Office, this registration served as prima facie evidence of the validity of the mark. Opp'n at 12. Plaintiff notes that this legal principle did not preclude Defendants from proving any legal or equitable defense that might have been asserted if the mark were not registered. Opp'n at 13 (citing 15 U.S.C. § 1115(a)). Because Plaintiff had the trademark registration for "Real Caller," Plaintiff correctly argues that the burden of proof was on Defendants to prove a defense to their infringement. *Id*. Therefore according to Plaintiff, Talent Mobile was not required to present any further evidence of the validity of the mark, as Jury Instruction No. 16 stated: "[T]he owner [of a Registration] may rely solely on the registration certificate to prove that the owner has the right to exclude others from using the trademark or a similar mark that is likely to cause confusion[.]" *Id*. at 13–14.

There are no grounds for a new trial. The Court adequately instructed on the law, and the jury's determination was consistent with the weight of the evidence. Under 15 U.S.C. §1115(a), a trademark registration owned by "a party to an action shall be admissible in evidence and shall be prima facie evidence of the validity of the registered mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration . . . but shall not preclude another person from proving any legal or equitable defense . . . which might have been asserted if such mark had not been registered." Plaintiff registered the trademark REAL CALLER, and the burden of proof was on Defendants to prove a defense to their infringement. Defendants' affirmative defenses presented at trial were (i) prior use and (ii) fraud upon the obtainment of the registration at the trademark office. As the Court instructed in Jury Instruction 16, the Defendants carried the burden of proving by a preponderance of the evidence that they had a valid prior use defense or that plaintiff's registration of the trademark was invalid because of a misrepresentation of material facts to the United States Patent and

Trademark Office. Jury Instruction No. 16. Simply stated, Defendants were unable to persuade the jury with regards to the Real Caller trademark, Registration No. 4671180.

      Having reviewed the trial record, it is clear that the weight of the evidence does not merit the extraordinary relief requested. In fact, the record demonstrates that Defendants failed to present evidence proving their prior use of the mark in the United States. Plaintiff elicited testimony from its expert witness and admitted trial exhibits, including Trial Exs. 89 and 90, that debunked the Defendants' prior use defense. As a further example of Defendants' failure to meet their burden of prior use, during the testimony of Georges Obeid, the witness stated that he did not believe evidence of sales in the United States was "important" to Defendants' case. Trial tr. vol. 1, 115 July 19, 2018. As to the unregistered REAL CALLER ID mark, Plaintiff presented evidence of a likelihood of confusion, although this element was largely self-evident. Throughout trial the Court repeatedly sought clarification about whether parties were referring to "real" or "reel" caller, and the Court's staff worked diligently to create an accurate record despite the obvious confusion these words create. Moreover, the testimony of Troy Anderson regarding the early creation of his Real Caller ID app in 2011—and his transfer of the app to Plaintiff—supports the jury's conclusion of infringement. The deposition was taken on April 11, 2018, and the Court instructed the jury to consider the testimony presented in court in lieu of live testimony in the same way as if the witness had been present to testify. *See* Trial tr. vol. 2, 78 July 19, 2018. There is nothing in the record to suggest the jury made its conclusions against the weight of the evidence.

      Moreover, the verdict is not irreconcilably inconsistent. As Defendants argued, the Real Caller logo was unique and different from Defendants' logo—written in softer pastel colors and a different font. The jury apparently agreed with Defendants that there was no infringement as to the logo. But the word marks and Real Caller ID app were confusing and led the jury to a different decision. Defendants are capable of infringing the word mark but not the logos. This is no basis for a new trial.

      With regards to apportionment, the Court denies Defendants' request to amend the judgment so that it is not joint and several. The evidence was sufficient to support the jury's findings of liability as to each of Headios Group, Bassam Istambouli, and Waleed Shaker. Corporate officers are "personally liable for [a] corporation's ... trademark infringements when they are a 'moving, active conscious force' behind the corporation's infringement." *See Daimler AG v. A-Z Wheels LLC*, 334 F. Supp. 3d 1087, 1106 (S.D. Cal. 2018). The testimony demonstrated that the individual defendants were a moving and active conscious force behind the infringement. As shown in Trial Exhibit 8, Bassam Istambouli listed himself as CEO of Headios Group, despite his efforts to claim this was a "typo." Tr. Ex. 8; Trial tr. vol. 2, 14-17 July 17, 2018. Moreover, neither party suggested

the inclusion of any apportionment on the verdict form, and both parties consented to and signed off on this decision before the end of trial. The Court will not grant Defendants' post-trial request to amend the verdict on this basis after their consent to the verdict form as submitted.

As to the amount of damages, the parties agree that under 15 U.S.C. § 1117, Plaintiff is entitled to recover Defendants' profits, any damages sustained by Plaintiff, and the costs of the action. Mot. at 21. Defendants argue that when removing all the "improper entries" from Exhibits 89 and 90, the total amount of sales attributed to Hedios Group is $213,544.71, much less than the $710,261.00 awarded by the jury. Defendants argue that Georges Obeid testified that Headios Group only received 50 percent of the revenue from "Real Caller" and/or "Reel Caller," and that because he and 3akarat.net were dismissed from the lawsuit, the amount of $213,544.71 should be further reduced by half to $106,772.35. Mot. at 24.

As Plaintiff notes (Opp'n at 19) there is sufficient evidence in the record for the jury to have determined the $710,261.00 award, and this number was fairly computed and is just given the findings of infringement. Evidence presented regarding the applications and diversion of consumers away from Plaintiff supports the jury's determination. Shaker testified that Defendants were making $1,000.00 in daily revenue, which he later increased to between $1,000.00 and $1,500.00 per day. Trial tr. vol. 1, 6 July 18, 2018. Shaker testified that in 2015 the daily revenue was approximately the same. *Id* And in 2016 and 2017, the daily revenue "did not change much." *Id*. Defendants argue that Headios Group did not acquire any rights to the marks until January 2016. *See* Reply at 7. But taking this argument at face value, there is still more than $1.3 million in revenue from that date until the start of trial. When calculating the revenue and cost over this time period, the jury's determination was below a rough calculation of the profits, and is well below Plaintiff's request. The Court stands by the jury's determination. It is supported by the evidence. The $710,261.00 figure is reasonable, fairly computed by the jury, and not excessive given the findings of infringement.

The Court similarly rejects Defendants' arguments regarding newly discovered evidence. Defendants have not demonstrated that the Blackberry evidence could not have been discovered earlier through due diligence or that this evidence is of such a magnitude that it alters the outcome of the trial.

Accordingly, Defendants' Motion for a New Trial or Amended Judgment is DENIED.

### B. Motion for Relief From Judgment

Defendants also separately move for relief from the judgment under Rule 60. Defendants largely repeat their arguments asserted in the Motion for a New Trial/Amended Judgment, but elaborate on the damages calculations. For the same reasons as discussed *supra*, the motion fails. The Court sees no basis for taking the extraordinary step of granting relief from judgment, especially in light of the evidence supporting the jury's determination and the reasonable amount awarded to Plaintiff.

### C. Motion for Attorneys' Fees and Costs

Plaintiff argues it is entitled to reasonable attorneys' fees and costs because Defendants filed counterclaims against Plaintiff that had no merit and were objectively unreasonable. Mot. at 7–8. According to Plaintiff, this is not a typical trademark case where the parties dispute in good faith whether or not there is a likelihood of confusion between two marks; the similarity between "real" and "reel" were so similar that Plaintiff argues Defendants unreasonably challenged this point. *Id*. at 8–9. Plaintiff contends that Defendants continued to litigate this dispute despite acknowledging that Plaintiff had been selling its Real Caller app on the iTunes App Store as of November 1, 2013. *Id*. at 13. Despite no prior use of the mark, Plaintiff argues Defendants pursued their claim and did not respond substantively to discovery on this topic. *Id*. According to Plaintiff, this behavior was malicious and intentional because their profits exceeded their legal defense fees, making their alleged strategy economically rational. *Id*. at 14.

Defendants respond that attorneys' fees and costs are not appropriate because this case was not exceptional. Defendants first largely embed their arguments regarding a new trial and relief from the judgment in their opposition: that Plaintiff did not present any evidence of first use or use in commerce of "Real Caller" before September 2013; or any evidence of consumer confusion or other factors with regard to "Real Caller ID." Opp'n at 7. Defendants next contend that they did not act in a frivolous or objectively unreasonable standard but rather were warranted in vigorously defending the action. *Id*. at 15. Defendants note that no discovery motions were filed in this action or its predecessor. *Id*. at 21.

The Ninth Circuit has explained that "generally a trademark case is exceptional for purposes of an award of attorneys' fees when the infringement is malicious, fraudulent, deliberate or willful." *Lindy Pen*, 982 F.2d at 1409. Willful infringement means that the defendant acted with a "deliberate intent to deceive." *Id.* at 1406. District courts analyzing a request for fees under the Lanham Act should examine the "totality of the circumstances" to determine if the case was exceptional. *SunEarth*, 839 F.3d at 1181.

Plaintiff's arguments regarding frivolous defenses with regard to consumer confusion are well taken. But the Defendants' alleged conduct, under the totality of the circumstances, does not elevate this case to the exceptional standard that triggers attorneys' fees under the Lanham Act. Defendants had every right to assert counterclaims and the bald assertion that Defendants continued to pursue these claims solely because the pursuit was economically rational falls flat. The absence of any motions to compel supports Defendants' contention that they did not act in bad faith during discovery. This case does not present the appropriate circumstances to award attorneys' fees or costs.

Accordingly, the Motion for Attorneys' Fees and Costs is DENIED.

### D.　　Motion for Permanent Injunction

Plaintiff argues that Defendants continue to infringe on the Real Caller trademark following the jury verdict and subsequent entry of judgment. Mot. at 9. According to Plaintiff, unless Defendants are permanently enjoined they will not stop their use of "Real Caller," "Real Caller ID," or "Reel Caller" in connection with the sale, offering for sale, advertising, or promotion of computer software, mobile applications, and web pages. *Id.* at 10. Plaintiff argues that Defendants' continued infringement is causing Plaintiff to lose control over its reputation and brand names. *Id.* at 14. Plaintiff points to the Declaration of Dr. Edwin Hernandez ("Hernandez Decl.") (Dkt. 171) for the support that some participants in the market warn consumers of suspicious cites containing malware, including Defendants' apps and usage. *Id.* Plaintiff also argues that Defendants' continued use of the marks is likely to result in additional actual confusion; hinders their expansion into the market; spawns other infringers; and could result in further litigation costs and expenses. *Id.* at 14–21.

Defendants respond that Plaintiff has failed to present evidence beyond speculation that it will face a loss of goodwill in the future, or that its inability to fully control the use of marks substantially similar to its own will result in irreparable harm. Opp'n at 10. While the jury found Defendants liable for infringement, Defendants note the jury "split its decision and also found that Defendants did not infringe Plaintiff's mark." *Id.* Thus Defendant suggests it is improper to issue an injunction prohibiting Defendants from infringing Plaintiff's mark when the jury issued a split verdict. *Id.*

"[T]he district court [has] the 'power to grant injunctions according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right' of the trademark owner." *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1137 (9th Cir. 2006) (citing 15 U.S.C. § 1116(a)). Permanent injunctive relief is appropriate where a plaintiff demonstrates: (1) it has suffered irreparable injury; (2) there

is no adequate remedy at law; (3) the balance of hardships favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391–92 (2006). Following trial, Plaintiffs have demonstrated continued harm and ongoing infringement. Plaintiff has provided four instances of actual confusion whereby consumers have confused the infringing "real caller" apps or "reel caller" apps with Plaintiff's application. This is not surprising to the Court, given the confusion at trial and the clear overlap between the registered mark and Defendants' use of similar terms. The jury found infringement of the trademark, and Defendants must cease any continuous use of their infringing applications. To hold otherwise would hinder Plaintiff's ability to cultivate and control its reputation and goodwill with the consuming public and result in additional confusion.

Accordingly, Plaintiff's motion for a permanent injunction is GRANTED. Defendants are permanently enjoined from infringing upon or otherwise using the trademark REAL CALLER or REAL CALLER ID, or using the trademark "REEL CALLER" in connection with the sale, offering for sale, advertising, or promotion of computer applications, mobile applications, and web pages.

## IV. Disposition

For the foregoing reasons, the Court DENIES Defendants' post-trial motions, DENIES Plaintiff's motion for attorney's fees, and GRANTS Plaintiff's motion for a permanent injunction.

The Clerk shall serve this minute order on the parties.